**In the Matter of W. Earl SMITH, Doing Business as Smith's Wholesale Meat Market, Bankrupt.**

**No. 4650.**

United States District Court
S. D. West Virginia,
Huntington Division.

Oct. 16, 1956.

W. H. Darnell, Huntington, W. Va., for bankrupt.

L. A. Staker, Huntington, W. Va., for objecting creditor, Marhoefer Packing Co.

Robert H. Burford, Huntington, W. Va., trustee in bankruptcy.

HARRY E. WATKINS, District Judge.

The Referee in Bankruptcy sustained the objections of a creditor, Marhoefer Packing Company, and the Trustee in Bankruptcy to the discharge of this debtor. The objections were founded upon two grounds: (1) That the bankrupt had failed to keep or preserve books of account or records in conformity with 11 U.S.C.A. § 32, sub. c(2); (2) that the bankrupt obtained credit by making a materially false financial statement, 11 U.S.C.A. § 32, sub. c(3). The bankrupt petitions for review.

The debtor was for many years engaged in the meat business, and founded his own wholesale meat market in Huntington, W. Va., some 12 to 15 years prior to becoming bankrupt. In the last 4 or 5 years, this venture increased to the point where his gross business was estimated to be $10,000 weekly by a certified public accountant who had audited the few available records. The debtor managed the business, and employed 5 or 6 men to do "inside" work and 2 men to drive delivery trucks.

During the entire 12–15 year period, the bankrupt kept no books. He is a man of little formal education, having reached only the fourth grade in school. The evidence before the Referee indicates that the debtor kept only one record book, in which he entered purchases and sales, but it is admitted by the debtor that this book is quite incomplete and many transactions were not recorded. The only other record produced by the debtor was his checkbook, where the auditor found a large percentage of the stubs blank and with no running balance. The accountant testified that no balance sheet or profit and loss statement could be made from the records kept by debtor. Through information supplied by creditors, banks, and cancelled checks, the accountant was able to make an audit for the year 1955, but even with that information from outside

sources the audit did not include a balance sheet and, for purposes of computing loss, the accountant was obliged to make the unrealistic assumption that all purchases were sold to debtor's customers at debtor's cost. This entire audit offers little assistance in ascertaining the true picture of the debtor's financial affairs.

Debtor's financial condition is further clouded by the fact that he admits that for a period of more than a year prior to becoming bankrupt, he was "overdrawn" at his bank, that he issued many post-dated checks, and that he resorted to the practice of "kiting" checks. In "kiting" checks, debtor would obtain checks from other persons, who had no funds in their accounts, deposit those checks in his account and draw against them. He would then make deposits to the other parties' accounts when he thought the checks would have cleared through the various banks. The extent of this practice was great, the accountant's audit indicating that in 1954 debtor exchanged 78 checks with one party, totaling $69,014.54; 30 checks with another, totaling $18,668.34; and 3 checks with a third party, totaling $3,755. Through his own outstanding checks of three banks, and "kiting" checks, debtor was able to keep up the pretense of meeting his bills when they became due.

With regard to the charge that debtor obtained credit by making a materially false financial statement, the evidence indicates that on January 26, 1955, a representative of Dun & Bradstreet visited the debtor and asked for a financial statement for the purpose of a credit rating. The Dun & Bradstreet representative states that the debtor told him, in reply to inquiry, that debtor had $2,000 cash, $15,000 inventory, $15,000 accounts receivable, etc. Debtor states that he gave no figures to the Dun & Bradstreet agent, but rather told him that "I'm so far in debt that I'll never get out." At any rate, the debtor signed the statement as being correct, indicating a net worth of $53,200 when in reality debtor was at that time insolvent. Relying primarily upon a Dun & Bradstreet report which incorporated that $53,200 figure, creditor Marhoefer Packing Company, Inc., extended credit to the debtor.

The debtor was adjudicated bankrupt on the 9th day of September, 1955, on an involuntary petition filed by J. T. Taylor Brokerage Co., D. D. Nowe Brokerage Co., and the Columbus Packing Co., Division of Armour and Company.

There is substantial evidence to sustain the Referee's findings of fact. The court is unable to say that such findings of fact are clearly erroneous.

Affirmed.